```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

JUSTIN T. HEMMER,

                            Plaintiff,

      -vs-                        **No. 6:15-CV-06546 (MAT)**
                                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                            Defendant.
_____

**I.  Introduction**

Represented by counsel, Justin T. Hemmer ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.  Procedural History**

The record reveals that in December 2012, plaintiff (d/o/b May 24, 1980) applied for SSI, alleging disability as of October 1, 2007. After his application was denied, plaintiff requested a hearing, which was held via videoconference before administrative law judge Rosanne M. Dummer ("the ALJ") on May 12, 2014. The ALJ

issued an unfavorable decision on May 23, 2014. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Evidence

The medical records in the administrative transcript, which are relatively sparse, reveal that plaintiff treated for both physical and mental impairments throughout the relevant time period. From February 17 through 21, 2012, plaintiff was hospitalized at Unity Health, Genesee Street campus in Rochester, New York, for treatment of depression and panic attacks. Plaintiff reported overdosing on Lyrica secondary to back pain and depression. Plaintiff reported that he took Lyrica to "get high," and that the overdose was not a suicide attempt. Plaintiff was discharged with a referral for chemical dependency treatment, and diagnosed with anxiety disorder, not otherwise specified ("NOS"); depressive disorder, NOS; and secondary polysubstance dependency.

Plaintiff's primary care physician for the relevant time period was Dr. Christopher Taggart. Treatment notes from Dr. Taggart, which span only three examinations from March 2011 through April 2014, indicate that plaintiff was referred to mental health counseling in March 2011. By May 2011, plaintiff reported to Dr. Taggart that his anxiety with panic attacks, depression, and social anxiety disorder were stable with medication. He regularly reported lower back pain secondary to degenerative disc disease, for which he was treated with medication.

In December 2013, Dr. Taggart noted that plaintiff had "moderate back pain secondary to fibromyalgia," for which he took Lyrica daily. Plaintiff described his pain as "achy" and physical examination revealed tenderness to palpation of his bilateral shoulders, mild muscle spasm, and perispinal muscle tenderness. In April 2014, however, Dr. Taggart noted that he "[did] not believe that [plaintiff] [met] the criteria for fibromyalgia," but "he [had] several medical and psychological illnesses that limit his ability to work," including "chronic generalized pain that requires him to frequently change positions." T. 359. Dr. Taggart also noted that plaintiff's "social anxiety [made] it difficult for him to work in an office setting without panic attacks." Id.

Mental health treatment notes from Unity Mental Health Pinewild, which span January 2013 through March 2014, indicate that plaintiff was treated by psychiatrists Drs. Anthony DiGiovanni and Muhammad Dawood, as well as licensed mental health counselor ("LMHC") Lauren Whaley Aman. Plaintiff's diagnoses were depressive disorder, NOS; cannabis dependence; and anxiety disorder, NOS. Dr. Giovanni noted that plaintiff suffered from panic attacks secondary to social anxiety. Mental status examinations, when conducted throughout the time period of plaintiff's treatment, were unremarkable except for occasional notations of superficial or impaired insight, although LMHC Aman did note that plaintiff consistently presented with depressed mood or constricted affect.

Dr. DiGiovanni repeatedly noted that plaintiff had difficulty with substance abuse, and supported close medication monitoring and a structured medication plan as a result. Plaintiff was prescribed as many as ten medications at one time for pain management and psychiatric symptoms.

In February 2014, LMHC Aman noted that plaintiff's therapy sessions were "focus[ed] on anxiety reduction skills and increasing self-motivation related to looking for employment." T. 297. She further noted that "[e]mployment was a condition of [plaintiff's] probation and upon consultation with Dr. DiGiovanni [he] believe[d] that [plaintiff was] capable of working." Id. LMHC Aman also repeatedly noted that plaintiff's attendance suffered either due to reported transportation issues or stressors at home.

Dr. Taggart completed a fibromyalgia medical source opinion questionnaire which he signed on July 18, 2014. It appears that Dr. Taggart was presented with this questionnaire in April 2014, when he noted that he "completed paperwork . . . from [plaintiff's] disability lawyer[,] . . . [in which the] [m]ajority of information was subjectively obtained by patient self report (ex: how many hours in an eight-hour workday day could you [perform a specified function])." T. 359-60. Additionally, as discussed above, Dr. Taggart stated in treatment notes that he did not believe plaintiff's condition met the criteria for fibromyalgia. On the July 2014 form, Dr. Taggart stated that plaintiff was *not* diagnosed

with fibromyalgia but that he suffered from "chronic pain," insomnia, esophageal reflux, and depression. T. 321. He noted that plaintiff's prognosis was "stable" and "chronic." Id. Dr. Taggart opined (by checking a box on the form) that plaintiff was "incapable of even low stress jobs" "due to social anxiety." T. 322. Dr. Taggart also opined various physical limitations, including that plaintiff could sit and stand for 15 minutes at a time during an eight-hour workday and could sit, stand, and/or walk for a total of about four hours in an eight-hour workday.

On January 30, 2013, Dr. Karl Eurenius completed a consulting internal medicine examination at the request of the state agency. Dr. Eurenius noted, on physical examination, that plaintiff "denie[d] any trigger points, and [Dr. Eurenius] [was] unable to provoke trigger point symptoms." T. 222. Dr. Eurenius opined that plaintiff was "not significantly limited in routine activities due to his medical conditions." Id.

LMHC Aman completed a mental medical source opinion questionnaire on April 9, 2014. She indicated that she had been treating plaintiff bi-weekly to monthly since February 2012. LMHC Aman opined that plaintiff was "seriously limited, but not precluded" in completing a normal workday and week without interruptions from psychologically-based symptoms and responding appropriately to changes in a routine work setting. She opined that plaintiff was "limited but satisfactory" in maintaining regular

attendance and being punctual within customary tolerances; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a routine work setting.

Psychologist Dr. Christine Jean-Jacque completed a consulting psychiatric evaluation at the request of the state agency on January 30, 2013. Plaintiff's mental status examination was unremarkable. Dr. Jean-Jacque opined that plaintiff "appear[ed] able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and appropriately deal with stress," but he did "not appear to adequately relate to others." T. 227.

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since December 21, 2012, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: chronic generalized pain disorder; anxiety disorder, NOS; depressive disorder, NOS; and polysubstance abuse.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In evaluating plaintiff's mental impairments, the ALJ found that he had mild restrictions in activities of daily living; "at most moderate" difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation of extended duration.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to:

> lift/carry 50 pounds occasionally and 25 pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. He can occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl. He should not climb ladders/ropes/scaffolds. He should not perform commercial driving. He should avoid concentrated exposure to dangerous moving machinery and cold. Secondary to mental limitations, the claimant can understand, remember, and carry out unskilled work. He is able to sustain attention for simple tasks, for extended periods of two hour segments in an eight hour day. He can tolerate brief and superficial contact with others and occasional brief and superficial contact with the public. He can adapt to changes as needed for unskilled, simple work.

T. 14 (citation omitted).

At step four, the ALJ found that plaintiff had no past relevant work. At step five, the ALJ found that considering plaintiff's age, work experience, and RFC, there were significant numbers of jobs in the national economy which he could perform. Accordingly, the ALJ found that plaintiff was not disabled.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Physical RFC Finding

Plaintiff contends that the ALJ failed to properly apply the treating physician rule to Dr. Taggart's December 2013 opinion and failed to give good reasons for assigning the opinion less than controlling weight. Consequently, plaintiff contends that the ALJ erroneously relied on his own lay interpretation of the medical record and the RFC was unsupported by substantial evidence.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed

8

controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)). The ALJ is also required to give "good reasons" for rejecting the treating physician's opinion. See Coluciello-Pitkouvich v. Astrue, 2014 WL 4954664, *6 (E.D.N.Y. Sept. 30, 2014) ("[T]he ALJ must expressly state the weight assigned and provide 'good reasons' for why the particular weight was assigned to each treating source's opinion.") (citing 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ assigned Dr. Taggart's opinion "limited weight," finding that it was not well-supported by the objective evidence of record, including Dr. Taggart's notations of "generally unremarkable" physical examinations. T. 21. The ALJ also noted that plaintiff saw Dr. Taggart "on a sporadic, infrequent basis" and considered Dr. Taggart's statement that the majority of information in his opinion was "subjectively obtained by patient self report (ex: how many hours in an eight-hour workday day could you [perform a specified function]"). Id.

In assessing the weight to be given to a treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. 416.927, which include (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the

9

consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist. The ALJ's decision in this case was supported by substantial evidence in the record, which reveals that Dr. Taggart's own treatment notes did not support his restrictive opinion of plaintiff's physical limitations. Significantly, Dr. Taggart opined that plaintiff did not suffer from fibromyalgia and his findings on physical examination were largely unremarkable and do not support his ultimate opinion of plaintiff's functional limitations.

Additionally, Dr. Taggart treated plaintiff on only three occasions between August 2012 and April 2014. Plaintiff does not dispute that these are the only examinations which occurred nor argue that any records from Dr. Taggart are missing. The ALJ appropriately considered the "[l]ength of the treatment relationship and the frequency of examination" in his rejection of Dr. Taggart's opinion. 20 C.F.R. 416.927(c)(2)(I). Moreover, the remainder of plaintiff's medical record does not support the physical limitations opined by Dr. Taggart. Therefore, the Court finds that the ALJ appropriately applied the treating physician rule in declining to give Dr. Taggart's opinion controlling weight. See, e.g., Gray v. Colvin, 2015 WL 5005755, *5 (W.D.N.Y. Aug. 20, 2015).

Plaintiff further argues that the ALJ erred in giving greater weight to the opinion of consulting examiner Dr. Eurenius, and that

because Dr. Eurenius' opinion did not specifically delineate physical restrictions, the RFC finding was unsupported by substantial evidence. However, "it is the province of the ALJ to make the RFC determination," and the Court finds that substantial evidence supports the RFC determination in this case. Roehm v. Comm'r of Soc. Sec., 2011 WL 6318364, *6 (N.D.N.Y. Nov. 28, 2011), report and recommendation adopted, 2011 WL 6326105 (N.D.N.Y. Dec. 16, 2011) (citing 20 C.F.R. § 416.946(c) (at the hearing level, it is the ALJ's responsibility to assess RFC); Aldrich v. Astrue, 2009 WL 3165726, *9 (N.D.N.Y. Sept.28, 2009) (the determination of a claimant's RFC is based on all relevant medical evidence and is reserved solely for the ALJ)).

**B.   Mental RFC Finding**

Plaintiff contends that the RFC finding failed to adequately account for limitations stemming from his mental impairments. Specifically, plaintiff contends that the RFC finding was inconsistent with the opinions of both LMHC Aman and Dr. Jean-Jacque. The Court disagrees, and finds that the RFC determination was consistent with both opinions. Dr. Jean-Jacque opined that plaintiff could follow and understand simple instructions and perform simple and complex tasks independently. The only limitation opined by Dr. Jean-Jacque was that plaintiff "[did] not appear to adequately relate to others." T. 227. LMHC Aman, who treated plaintiff directly, opined that plaintiff was seriously limited –

11

but not precluded – from performing in only two out of a possible 25 areas of mental work-related areas of functioning.

Based on the Court's review of this administrative record, the ALJ's RFC finding limiting plaintiff simple tasks and only superficial contact with others sufficiently accounted for the limitations prescribed by both LMHC Aman and Dr. Jean-Jacque. See, e.g., Steffens v. Colvin, 2015 WL 9217058, *4 (W.D.N.Y. Dec. 16, 2015) ("In this case, the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress.") (citing Amrock v. Colvin, 2014 WL 1293452, *7 (N.D.N.Y. Mar. 31, 2014) (RFC finding was proper where plaintiff's stress associated with bipolar disorder was accounted for by restriction to "simple, routine, low stress tasks with brief, superficial contact with coworkers and the public"); Kotasek v. Comm'r of Soc. Sec., 2009 WL 1584658, *13 (June 3, 2009) (ALJ's RFC finding, which limited contact with other individuals, was supported by substantial evidence where medical opinions indicated that plaintiff had stress stemming from social phobias)).

### C. Severity of Plaintiff's Alleged Fibromyalgia

Plaintiff argues that the ALJ "fail[ed] to acknowledge that [p]laintiff has been diagnosed with fibromyalgia," in an apparent attempt to challenge the ALJ's step two finding. Doc. 11-1 at 17. However, Dr. Taggart's treatment notes and opinion make clear that he did *not* diagnose plaintiff with fibromyalgia, and Dr. Taggart

explicitly stated that he "[did] not believe that [plaintiff] [met] the criteria for fibromyalgia." T. 359. Rather, Dr. Taggart diagnosed plaintiff with "chronic generalized pain," which the ALJ found to be severe at step two. Additionally, Dr. Eurenius' consulting examination noted that plaintiff denied trigger point tenderness and Dr. Eurenius was unable to provoke trigger point tenderness.

Moreover, there is no indication from the ALJ's decision that the ALJ failed to consider the impact of plaintiff's generalized pain throughout the balance of the sequential evaluation process. See Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (""As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process.") (internal quotation marks and citations omitted).

### D.   Development of the Record

Plaintiff contends that the ALJ failed to develop the record with respect to LMHC Aman's treatment notes. According to plaintiff, the ALJ failed to obtain treatment notes indicated by her April 9, 2014 statement that she had treated plaintiff bi-weekly or monthly since February 2013. LMHC Aman's treatment notes are present in the record and span the time period from February

2013 through February 2014. It does appear that she began treating plaintiff in February 2012, and therefore approximately a year of her records may be missing. However, the Court notes LMHC Aman's repeated statements that plaintiff had often failed to appear for appointments; thus, it is unclear to what extent treatment notes from LMHC Aman existed prior to February 2013.

The Court finds that there were "no *obvious* gaps in the administrative record" and the ALJ "possesse[d] a complete medical history, and therefore was "under no obligation to seek additional information in advance of rejecting [plaintiff's] claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (emphasis added). This is especially true because the administrative record makes clear that plaintiff's attorney was actively involved in obtaining approximately half of the total medical record exhibits and providing those to the ALJ. "Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal citations omitted). Accordingly, the Court finds that the ALJ properly discharged his obligation to develop the record.

### E. Credibility

Finally, plaintiff contends that the ALJ erroneously assessed his credibility. In assessing credibility, an ALJ is required to

consider the factors listed in 20 C.F.R. § 416.929(c) as well as other relevant authorities, including SSR 96-7p. Pursuant to SSR 96-7p,[1] the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."

First, plaintiff argues, the ALJ's credibility assessment was based on an incomplete record. The Court has found, however, that the record in this case gave a complete history of plaintiff's medical impairments. Second, plaintiff argues that the ALJ improperly "discounted" plaintiff's panic attacks because "there were no documented panic episodes" and his "panic attacks were 'never witnessed' by [LMHC Aman]." Doc. 11-1 at 28 (citing T. 19). However, LMHC Aman *herself* explicitly wrote, in a handwritten note, that although she checked a box indicating that plaintiff suffered from recurrent panic attacks, those attacks were "never witnessed by" her. T. 233. Under the circumstances, and considering the substantial evidence of record which as the ALJ noted contained largely unremarkable mental status examinations, the Court finds

---

[1] The Court notes that SSR 96-7p was recently superceded by SSR 16-3p, which became effective March 28, 2016. SSR 96-7p, however, remains the relevant guidance for purposes of plaintiff's claim.

that the ALJ properly considered LMHC's notation in considering plaintiff's credibility.

Third, plaintiff contends that the ALJ improperly considered her own opinion that the "claimant's presence and testimony at the hearing did not indicate any obvious problems." Doc. 11-1 at 29 (citing T. 19). However, "[w]here an individual attends an administrative hearing conducted by the ALJ, the ALJ may consider 'her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.'" Conant v. Comm'r of Soc. Sec., No. 3:15-CV-500 (GLS), 2016 WL 6072386, at *5 (N.D.N.Y. Oct. 17, 2016) (citing SSR 96-7p).

Fourth, plaintiff takes issue with the ALJ's citation to plaintiff's criminal history in support of her credibility finding. However, it was not improper for the ALJ to consider, as just one of the many factors considered, that plaintiff had an undisputed criminal history. See, e.g., Vine v. Comm'r of Soc. Sec., 2013 WL 3243562, *10 (N.D.N.Y. June 26, 2013) (finding "no error in the ALJ's decision to discount [p]laintiff's credibility based on his undisputed criminal record").

Finally, plaintiff contends that the ALJ erroneously considered plaintiff's babysitting in determining credibility. It is clear from the ALJ's decision, however, that her discussion of plaintiff's childcare reflected proper consideration of plaintiff's activities of daily living, a factor which is delineated in the

regulations. See 20 C.F.R. 416.929(c)(i). For all of the above-stated reasons, the Court finds no error in the ALJ's credibility determination.

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 11) is denied and the Commissioner's motion (Doc. 13) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                                      **S/Michael A. Telesca**
                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    December 22, 2016
             Rochester, New York.